# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HOAI NGUYEN,<br><br>        Plaintiff,<br><br>  v.<br><br><br>TRANSLATE BIO, INC., RONALD C. RENAUD, JR., OWEN HUGHES, DANIELLA BECKMAN, GEORGE DEMETRI, JEAN-FRANÇOIS FORMELA, ROBERT J. MEYER, AND ROBERT M. PLENGE,<br><br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Hoai Nguyen ("Plaintiff") by and through their undersigned attorneys, brings this action on behalf of themselves, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Translate Bio, Inc. ("Translate Bio" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Translate Bio and the Defendants.

**SUMMARY OF THE ACTION**

1.      This is an action brought by Plaintiff against Translate Bio and the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by affiliates of Sanofi AG. ("Sanofi") (the "Proposed Transaction").

2.      On August 2, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Sanofi.  Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive $38.00 in cash for each share they own (the "Merger Consideration").

3.      In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Translate Bio's outstanding common stock and will expire on September 13, 2021 (the "Tender Offer").

4.      On August 16, 2021, in order to convince the Company's shareholders to tender their shares in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading solicitation statement with the SEC (the "Solicitation Statement").

5.      Accordingly, the failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Translate Bio stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction.

6.      As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act.

8.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

10.     Plaintiff is, and has been at all times relevant hereto, the owner of Translate Bio shares.

11.     Defendant Translate Bio is incorporated under the laws of Delaware and has its principal executive offices located at 29 Hartwell Avenue, Lexington, Massachusetts.   The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "TBIO."

12.     Defendant Ronald C. Renaud, Jr. ("Renaud") is and has been the Chief Executive Officer ("CEO") and a chairperson of the Board of Translate Bio at all times during the relevant time period.

13.     Defendant Owen Hughes ("Hughes") is and has been a Translate Bio director at all times during the relevant time period.

14.     Defendant Daniella Beckman ("Beckman") is and has been a Translate Bio director at all times during the relevant time period.

15.     Defendant George Demetri ("Demetri") is and has been Translate Bio at all times during the relevant time period.

16.     Defendant Jean-François Formela ("Formela") is and has been a Translate Bio director at all times during the relevant time period.

17.     Defendant Robert J. Meyer ("Meyer") is and has been a Translate Bio director at all times during the relevant time period.

18.     Defendant Robert M. Plenge ("Plenge") is and has been a Translate Bio director at all times during the relevant time period.

19.     Defendants Renaud, Hughes, Beckman, Demetri, Formela, Meyer, and Plenge are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, along with Defendant Translate Bio, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.     Translate Bio is a clinical-stage mRNA therapeutics company developing a new class of potentially transformative medicines to treat diseases caused by protein or gene dysfunction, or to prevent infectious diseases by generating protective immunity. Translate Bio is primarily focused on applying its technology to treat pulmonary diseases with a lead pulmonary candidate being evaluated as an inhaled treatment for cystic fibrosis in a Phase 1/2 clinical trial. Additional pulmonary diseases are being evaluated in discovery-stage research programs that utilize a proprietary lung delivery platform. Translate Bio also believes it technology may apply

broadly to a wide range of diseases, including diseases that affect the liver. Additionally, the

platform may be applied to various classes of treatments, such as therapeutic antibodies and

protein degradation. Translate Bio is also pursuing the development of mRNA vaccines for

infectious diseases under a collaboration with Sanofi Pasteur.

**The Company Announces the Proposed Transaction**

22.    On August 3, 2021, the Company jointly issued a press release announcing the

Proposed Transaction.  The press release stated in part:

> **PARIS and LEXINGTON, Mass – August 3, 2021 –** As part of Sanofi's endeavor to accelerate the application of messenger RNA (mRNA) to develop therapeutics and vaccines, the company has entered into a definitive agreement with Translate Bio (NASDAQ: TBIO), a clinical-stage mRNA therapeutics company, under which Sanofi will acquire all outstanding shares of Translate Bio for $38.00 per share in cash, which represents a total equity value of approximately $3.2 billion (on a fully diluted basis). The Sanofi and Translate Bio Boards of Directors unanimously approved the transaction.
>
> *"Translate Bio adds an mRNA technology platform and strong capabilities to our research, further advancing our ability to explore the promise of this technology to develop both best-in-class vaccines and therapeutics,"* said Paul Hudson, Sanofi Chief Executive Officer. *"A fully owned platform allows us to develop additional opportunities in the fast-evolving mRNA space. We will also be able to accelerate our existing partnered programs already under development. Our goal is to unlock the potential of mRNA in other strategic areas such as immunology, oncology, and rare diseases in addition to vaccines."*
>
> *"Sanofi and Translate Bio have a shared commitment to innovation in the mRNA space. With Sanofi's long-standing expertise in developing and commercializing vaccines and other innovative medicines on a global scale, Translate Bio's mRNA technology is now even better positioned to reach more people, faster,"* said Ronald Renaud, Chief Executive Officer, Translate Bio. *"The talented and dedicated Translate Bio team has built the foundation of a strong mRNA platform. Our expertise coupled with that of Sanofi has driven significant progress under the collaboration thus far, and we believe that this acquisition will strengthen the team's ability to achieve the full potential of the mRNA technology."*
>
> In June 2018, Sanofi and Translate Bio entered into a collaboration and exclusive license agreement to develop mRNA vaccines which was further expanded in 2020 to broadly address current and future infectious diseases. There are two

ongoing mRNA vaccine clinical trials under the collaboration, the COVID-19 vaccine Phase 1/2 study with results expected in Q3 2021 and the mRNA seasonal influenza vaccine Phase 1 trial with results due in Q4 2021. The acquisition builds on Sanofi's establishment of a first-of-its kind vaccines mRNA Center of Excellence.

On the therapeutic side, Translate Bio has an early-stage pipeline in cystic fibrosis and other rare pulmonary diseases. In addition, discovery work is ongoing in diseases that affect the liver, and Translate Bio's MRT$^{TM}$ platform may be applied to various classes of treatments, such as therapeutic antibodies or vaccines in areas such as oncology. Sanofi's recent acquisition of Tidal Therapeutics expanded the company's mRNA research capabilities in both immuno-oncology and inflammatory diseases. The Translate Bio acquisition further accelerates Sanofi's efforts to develop transformative medicines using mRNA technology.

**Transaction Terms**

Under the terms of the merger agreement, Sanofi will commence a cash tender offer to acquire all outstanding shares of Translate Bio common stock for $38.00 per share in cash reflecting a total equity value of Translate Bio of approximately $3.2 billion. The purchase price represents a premium of 56% to Translate Bio's volume-weighted average price per share over the past 60 days.

To demonstrate their commitment to the transaction, the chief executive officer of Translate Bio and Translate Bio's largest shareholder, The Baupost Group, L.L.C., have signed binding commitments to support the tender offer. These binding commitments, combined with the Translate Bio shares already owned by Sanofi or its affiliates, represent a total of approximately 30% of Translate Bio's total shares outstanding.

The consummation of the tender offer is subject to customary closing conditions, including the tender of a number of shares of Translate Bio common stock that together with shares already owned by Sanofi or its affiliates represents at least a majority of the outstanding shares of Translate Bio common stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the tender offer, a wholly owned subsidiary of Sanofi will merge with Translate Bio and the outstanding Translate Bio shares not already owned by Sanofi or its affiliates that are not tendered in the tender offer will be converted into the right to receive the same $38.00 per share in cash paid in the tender offer. The tender offer is expected to commence later this month. Sanofi plans to fund the transaction with available cash resources. Subject to the satisfaction or waiver of customary closing conditions, Sanofi expects to complete the acquisition in the third quarter of 2021.

Morgan Stanley & Co. International plc is acting as exclusive financial advisor to Sanofi while Weil, Gotshal & Manges LLP is acting as legal counsel. Centerview Partners is acting as lead financial advisor to Translate Bio in the transaction, while Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel. Evercore is also acting as a financial advisor in this transaction to Translate Bio. MTS Health Partners, LP is also giving financial advice to Translate Bio.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE SOLICITATION STATEMENT

23.     On August 16, 2021, the Company authorized the filing of the Solicitation Statement with the SEC.   The Solicitation Statement recommends that the Company's shareholders tender their shares in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Solicitation Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to tender their shares in favor of the Proposed Transaction.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

25.     The Solicitation Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]   Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs

regarding forward-looking information, such as financial projections, explicitly requires

companies to provide any reconciling metrics that are available without unreasonable efforts.

27.     In order to make management's projections included in the Solicitation Statement

materially complete and not misleading, Defendants must provide a reconciliation table of the

non-GAAP measures to the most comparable GAAP measures.

28.     Specifically, with respect to the Company's projections, the Company must

disclose the line item projections for the financial metrics that were used to calculate the non-

GAAP measures, including: (i) EBIT; and (ii) Unlevered Free Cash Flow.

29.     Disclosure of the above information is vital to provide investors with the complete

mix of information necessary to make an informed decision when deciding whether to tender

their shares in favor of the Proposed Transaction.  Specifically, the above information would

provide shareholders with a better understanding of the analyses performed by the Company's

financial advisor in support of its opinion.

---

Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND      EXCHANGE      COMMISSION      (May      17,      2017),      *available      at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Centerview's Financial Opinions**

30.     The Solicitation Statement contains the financial analyses and opinion of Centerview Partners ("Centerview") concerning the Proposed Transaction, but fails to provide material information concerning such.

31.     With respect to Centerview's *Selected Public Company Analysis*, the Solicitation Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

32.     With respect to Centerview's *Selected Precedent Transaction Analysis*, the Solicitation Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

33.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis underlying Centerview's use of the discount rates range used in the analysis; (ii) weighted average cost of capital of the Company; (iii) the Company's terminal value; (v) the basis underlying the assumption that the Company's unlevered free cash flows would decline in perpetuity after December 31, 2049 at a rate of free cash flow decline of 20% year over year; (vi) the basis underlying the perpetuity growth rate used in the analysis; (vii) the number of fully-diluted outstanding shares of Company common stock.

34.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the range of discount rates used in the analysis; (ii) Company's estimated cash.

35.     With respect to Centerview's *Analyst Price Target Analysis*, the Solicitation Statement fails to disclose the specific price targets observed, as well as the sources thereof.

36.     With respect to Centerview's *Premia Paid Analysis*, the Solicitation Statement fails to disclose the premiums of the selected transactions.

37.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

38.     Without the above described information, the Company's shareholders are not fully informed with respect to the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(d)
### of the Exchange Act and Rule 14d-9 Promulgated Thereunder)

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder makes it a requirement to make full and complete disclosure in connection with tender offers.

41.     As discussed herein, the Solicitation Statement, while soliciting shareholder support for the Proposed Transaction, misrepresent and/or omit material facts concerning the Proposed Transaction.

42.     Defendants prepared, reviewed, filed and disseminated the false and misleading Solicitation Statement to Translate Bio shareholders. In doing so, Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43.     The omissions and incomplete and misleading statements in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in favor of the Proposed Transaction. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

44.     By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Proposed Transaction negotiation and sales process and reviewing Translate Bio's financial advisor's complete financial analyses purportedly summarized in the Solicitation Statement.

45.     The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46.     Translate Bio is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Solicitation Statement.

47.     Defendants knew that Plaintiff would rely upon the Solicitation Statement in determining whether to tender their shares in favor of the Proposed Transaction.

48.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder, absent injunctive relief from the Court, Plaintiff will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

49.     Plaintiff has no adequate remedy at law.

## COUNT II

### (Against All Defendants for Violation
### Of Section 14(e) of the Exchange Act)

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made false statements of material fact or failed to state all material facts that would be necessary to make the statements made, in light of the circumstances, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction.

52.     Defendants knew that Plaintiff and the Company's shareholders would rely upon their statements made in the Solicitation Statement in determining whether to tender shares in favor of the Proposed Transaction.

53.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

## COUNT III

**(Against the Individual Defendants for**
**Violations of Section 20(a) of the Exchange Act)**

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

55.     The Individual Defendants acted as controlling persons of Translate Bio within

the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions

as officers and/or directors of Translate Bio, and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the

Solicitation Statement filed with the SEC, they had the power to influence and control and did

influence and control, directly or indirectly, the decision-making of the Company, including the

content and dissemination of the various statements which Plaintiff contends are false and

misleading.

56.     Each of the Individual Defendants were provided with or had unlimited access to

copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the

issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the securities

violations alleged herein, and exercised the same. The Solicitation Statement contain the

unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transaction. They were thus directly connected with and involved in the making of the

Solicitation Statement.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

59.     As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for the damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 20, 2021                                          Respectfully submitted,

                                                                By: */s/ Joshua M. Lifshitz*
                                                                Joshua M. Lifshitz
                                                                Email: jml@jlclasslaw.com
                                                                **LIFSHITZ LAW FIRM, P.C.**
                                                                1190 Broadway,
                                                                Hewlett, New York 11557
                                                                Telephone: (516) 493-9780
                                                                Facsimile: (516) 280-7376

                                                                *Attorneys for Plaintiff*